**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RELIANT INCOME FUND, LLC; and RELIANT INCOME STBL II, LLC<br><br>v.<br><br>NEXT BANK INTERNATIONAL, INC.; RICHARD BALLES; ANAXIMANDRO MORAES; GARFIELD ANTONIO; COMMUNITY REDEVELOPMENT, INC.; ARTISTRY DC 1, LLC; 2228 13TH LLC; 21ST CONDOS LLC; 1326 8TH ST LLC; 1000 18TH ST NE 2020 LLC; 1320 8TH ST FUND LLC; A/X CARPENTERS, LLC; AND RBC PROPERTIES LLC | No. 2:25-cv-06341-GAW |

**MEMORANDUM**

## I. Factual and Procedural Background

This dispute arises from several loan transactions between Plaintiffs and Defendant Next Bank International, Inc. According to the Amended Complaint, Plaintiff Reliant Income Fund, LLC (Reliant) is a private equity fund, of which non-party Reliant Income STBL I, LLC (STBL I) and Plaintiff Reliant Income STBL II, LLC are subsidiaries (STBL II). Am. Compl. (Dkt. 37) at 7.[1]

Defendant Richard Balles (Balles) is a co-founder, Director, and Executive Vice President of Defendant Next Bank International, Inc. (Next Bank), a commercial lender. *Id.* at 33. Balles controls the following real estate entities which are named

---

[1] Citations to the Amended Complaint refer to page number.

defendants in this case: RBC Properties, LLC (RBC), Community Redevelopment Inc. (Community Redevelopment), and Artistry DC 1, LLC (Artistry). *Id.* at 19, 22, 34.

Defendant Anaximandro Moraes (Moraes), Balles' brother-in-law, is a member of five real estate limited liability companies (collectively "the Moraes Entities"), each of which are named as defendants in the present case. *Id* at 18. Moraes also controls A/X Carpenters, a limited liability company that provides general contracting services. *Id.* at 23.

In May 2021, Reliant and Next Bank entered into a Master Mortgage Loan Purchase Agreement (MLPA) to govern the terms of future commercial loan sales by Defendant Next Bank to Plaintiff Reliant and its subsidiaries. *Id.* at 7. The agreement included specific warranties regarding loans that would later be offered for sale, such as: that the decision to grant each loan was not tainted by conflict of interest; that the loans were not the product of adverse selection by Next Bank; and that Next Bank had complied with certain underwriting guidelines agreed to by the parties. *Id.* at 10. The MLPA further stipulated that Next Bank would verify construction progress on the mortgaged properties for the purpose of administering draw requests. *Id.* at 14. Over the next year, Reliant and its subsidiaries purchased 30 loans from Next Bank. *Id.* at 8. Among these were five loans (the Moraes Loans) to the Moraes Entities, companies purportedly under Moraes' sole control. *Id.* at 18.

Although Next Bank allegedly marketed the Moraes Loans as having been originated through arms-length dealings, the Amended Complaint asserts that Defendant Balles secretly exerted control over the Moraes Entities at the time the

loans were issued. *Id.* at 7–8. According to Plaintiffs, Balles assisted Moraes in completing the loan applications and used his position at Next Bank to facilitate their approval. *Id.* at 18. Knowingly concealing this information, Next Bank then sold those loans to Plaintiffs with the intent of shifting the risk of default on those loans from itself to Plaintiffs. *Id.* at 8. Ultimately, the Moraes Entities defaulted on all five Moraes Loans. *Id.*

Plaintiffs further allege that after Plaintiffs acquired the Moraes Loans, Defendants knowingly submitted false information about construction budgets and progress to Plaintiffs in order to induce them to transfer unnecessary funds to the Moraes Entities. *Id.* at 23–28. Plaintiffs complied with some of these requests, leading to increased financial losses when the loans defaulted. *Id.* at 28. Once Plaintiffs foreclosed on the properties, Defendant Balles attempted to repurchase them using other companies under his control (i.e., Defendants Community Redevelopment, Artistry, and RBC). *Id.* at 28–29.

Plaintiffs allege to have uncovered the extent of the purportedly deceptive practices by Defendants in early 2025. *Id.* at 15. In February 2025, Plaintiffs sent two demand letters to Defendant Next Bank outlining the alleged breaches of the MLPA, but they received no response. *Id.* Plaintiffs then filed suit in the Philadelphia County Court of Common Pleas in May 2025. Defs.' Br. (Dkt 48-1) at 2. After Defendants removed the action to this Court in November 2025, Plaintiffs filed an Amended Complaint, asserting violations of 18 U.S.C. § 1962 (the Federal Racketeer Influenced and Corrupt Organizations Act or RICO) against all defendants, Am. Compl. at 16,

tortious interference against Balles, Moraes, Community Redevelopment, RBC, Artistry, the Moraes Entities, and A/X Carpenters, *id.* at 38, breach of contract against Next Bank, *id.*, civil conspiracy against Balles, Moraes, Community Redevelopment, RBC, Artistry, the Moraes Entities, and A/X Carpenters, *id.* at 40, and common-law fraud against Next Bank, Balles, Moraes, and the Moraes Entities. *Id* at 41. Defendants Balles, Moraes, and A/X Carpenters (the Moving Defendants) filed this Motion to Dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs replied and the Motion is now ripe for consideration.

## II. Motion to Dismiss Standard

In assessing Moving Defendants' Motion to Dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). Having done so, the Court must then determine whether such facts "allow[ ] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Only the allegations contained in the Amended Complaint are relevant to this process. *See Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017) ("Also in general, an amended pleading—like the amended complaint here—supersedes the earlier pleading and renders the original pleading a nullity.").

Courts deciding a motion to dismiss may also consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d. 217, 221 n.3 (3d Cir. 2004), *abrogated in part on other*

*grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). As a contract forms the basis of any claim of its own breach, a court may consider it even if it was not attached to the complaint. *See In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 740 (E.D. Pa. 2011) (Pratter, J.).

## III. Analysis

### A) Standing

The Moving Defendants first challenge Plaintiffs' standing to bring their claims. Defs.' Br. at 5. The Moving Defendants claim that "[t]he facts Plaintiffs purport to assert are too inconsistent and vague to understand if *either Plaintiff currently has any* standing to assert claims in this case, and if so for which, if any, of the five (5) Moraes Loans at issue." *Id.* at 5 (emphasis in original).

According to the Amended Complaint, Plaintiff Reliant purchased three of the Moraes Loans (2228 13th Street, 1618 21st Street, and 1326 8th Street) and Plaintiff STBL II purchased one (1326 8th Street). Am. Compl. at 21. The remaining Moraes Loan (1000 18th Street) was purchased by Reliant Income STBL I, *id.*, of which Plaintiff Reliant Income STBL II is said to be successor-in-interest. Taking these allegations as true, the Amended Complaint clearly establishes a chain of title for all five loans sufficient to demonstrate Plaintiffs' standing to bring claims in relation to the purchases of those loans.

The Moving Defendants raise various arguments in opposition to this conclusion, but none are satisfactory. First, Moving Defendants allege that there are inconsistencies between the original complaint and the Amended Complaint. Defs.' Br. at 6. As the original complaint is a legal nullity, there is no basis for Moving Defendants to consider the allegations made therein. Furthermore, regardless of the merits of this contention, Moving Defendants' assertion that "Plaintiffs are **not** entitled to assert alternative facts," Defs.' Br. at 7 (emphasis in original), is incorrect as a matter of law. *See W.V. Realty, Inc. v. Northern Ins. Co.*, 33 F.3d 306, 316 (3d Cir. 2003) ("The Federal Rules of Civil Procedure permit parties to file pleadings containing inconsistent factual and legal allegations."). Only when those inconsistencies prevent the Court from drawing a reasonable inference that the Defendants are liable for the misconduct alleged do such inconsistencies support a motion to dismiss for failure to state a claim. *Cf. Lisa Dally v. TransUnion LLC, Beneficial State Bank*, No. 2:26-CV-00025, 2026 WL 2019870, at *6 n.3 (E.D. Pa. July 13, 2026) (Weilheimer, J.).

Additionally, Moving Defendants assert that

> [t]here are **no** allegations in either the Complaint or the Am. Complaint that make clear a) if **any** Plaintiff currently has any right, title or interest to any Moraes Loan purchased by dissolved non-plaintiff, Reliant STBL, let alone all five of them, or b) if dissolved non-party, Reliant STBL, ever assigned or transferred the one Moraes Loan it now is alleged to have purchased, or c) that Reliant STBL II was ever assigned any Moraes loan from Reliant or dissolved non-party, Reliant STBL.

*Id.* at 7 (emphasis in original). While it is true that the Amended Complaint does not explicitly identify that STBL I transferred the loan to STBL II, Plaintiffs' assertion

that STBL II is STBL I's successor-in-interest is sufficient to support a plausible inference to that affect.

Finally, Moving Defendants point to the dates of incorporation of STBL I and STBL II as falsifying various claims made by Plaintiffs. Defs.' Br. at 6. To the extent that these facts reveal inconsistencies in the original complaint, they in no way belie the assertions in the Amended Complaint. The Moving Defendants seem to be under the impression that the statement in the Amended Complaint that "Plaintiffs purchased thirty [ ] loans from Next Bank" implies that Reliant and STBL II jointly purchased each of the loans. *Id.* Their argument follows that a joint purchase would be impossible if STBL II was not formed until after the four of the five Moraes Loans were purchased. *See id.* at 7. This Court disagrees with Defendants' reading of the Amended Complaint.

Instead, the Amended Complaint alleges that between May 2021 and March 2022, Plaintiff Reliant and its subsidiaries separately purchased 30 loans from Defendant Next Bank. Am. Compl. at 8. Some of those loans were purchased by Plaintiff Reliant, some by Plaintiff STBL I, and some by non-party subsidiary STBL II. *Id.* at 21. The date on which each corporation is alleged to have purchased a loan from Defendant Next Bank is after its date of incorporation and before its date of dissolution (where applicable). *Compare id. with* Defs.' Br. at 6. Plaintiff STBL II existed at the time of non-party STBL I's voluntary dissolution, making the Amended Complaint's claim that STBL II is successor-in-interest to STBL I plausible. In

summary, Moving Defendants' invocation of the dates of incorporation of each of Plaintiff Reliant's subsidiaries does not undermine Plaintiffs' claims to standing.

As a result, Defendants' Motion to Dismiss for lack of standing is denied.

**B) Fraud**

The Moving Defendants further argue that Plaintiffs failed to state a claim for fraud under Pennsylvania law on two grounds. First, they contend that Plaintiffs' fraud claims are essentially duplicative of their breach of contract claims and that they should be barred under the gist-of-the-action doctrine. Defs.' Br. at 10–11. Next, Moving Defendants contend that Plaintiffs are blocked from using any precontractual evidence to support fraud claims under the parol evidence rule. *Id.* at 9–10.

*i) Gist-of-the-Action Doctrine*

The gist-of-the-action doctrine is a principle of Pennsylvania law that "ensure[s] that a party does not bring a tort claim for what is, in actuality, a claim for breach of contract." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014). Actions that should be brought in contract are characterized by breaches of duties originating solely from an agreement. *See id.* at 68. Those that may be brought in tort stem from breaches of "broader social dut[ies] owed to all individuals." *Id.* The same act can sound in both tort and contract. *SodexoMAGIC, LLC v. Drexel University*, 24 F.4th 183, 217 (3d Cir. 2022).

In the present case, Plaintiffs allege that Defendants committed fraud in two stages. First, by submitting fraudulent loan documentation to Plaintiffs to encourage Plaintiffs to purchase the Moraes Loans. Am. Compl. at 41. Next, by submitting false

progress reports and inflated construction budgets with their draw requests to induce Plaintiffs to transfer unnecessary funds to the loan recipients. *Id.* at 42. Although this latter set of misrepresentations cannot support a fraud claim under the gist-of-the-action doctrine as they only breach duties grounded in contract, Plaintiffs' claims related to the former set are properly brought in tort as violations of broader social duties.

Plaintiffs' fraud claims related to the draw requests are more accurately characterized as breaches of contract. Subsection 23.01 of the MLPA stipulates that Plaintiffs, as purchasers of the loans, were obligated to "pay or cause to be paid Additional Draw Amounts following Purchaser receipt of the Additional Draw Report from Seller . . . ." MLPA at 41. Plaintiffs performed this obligation. By not honestly informing Plaintiffs about construction progress or ultimately repaying the loan, Defendants did not perform their obligations, denying Plaintiffs the benefit of the bargain under the agreement. This is a classic example of breach of contract. *See Restatement (Second) of Contracts* § 235(2) (Am. Law Inst. 1981) ("When performance of a duty under a contract is due any non-performance is a breach."). While Defendants' deception prevented Plaintiffs from identifying the breach, their conduct does not change the essence of the dispute from one in contract to one in tort. *See KBZ Communications, Inc. v. CBE Technologies LLC.*, 634 Fed. App'x 908, 911–12 (3d Cir. 2015) (non-precedential). As such, the gist of the action is in contract.

But Pennsylvania common law has long recognized that "a precontractual duty not to deceive through misrepresentation or concealment exists independently of a

later-created contract." *See SodexoMAGIC*, 24 F.4th at 217. For this reason, the gist-of-the-action doctrine does not "bar a fraud claim stemming from the fraudulent inducement to enter into a contract." *Mirizio v. Joseph*, 4 A.3d 1073, 1085 (Pa. Super. 2010) (quoting *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. 2005)).

Plaintiffs have a colorable claim for fraudulent inducement with respect to Defendants Balles and Moraes' affirmative misrepresentations and concealment about the ownership of the Moraes Entities. *See Norfolk Southern Railway Co. v. Pittsburgh & West Virginia Railroad*, 870 F.3d 244, 255 (3d Cir. 2017) (observing that "a fraud occurs when one is induced to assent when he would not otherwise have done so." (internal quotation marks and citation omitted)). This claim would exist regardless of whether the parties had reached a previous agreement governing the terms of the sale like the MLPA. Consequently, the facts alleged in the complaint support the inference that the duty that Defendants Balles and Moraes breached was extracontractual. Thus, Plaintiff's fraud claims against the Moving Defendants with respect to representations in their loan applications are not barred by the gist-of-the-action doctrine.

Plaintiffs have properly plead fraud claims related to the sale of the Moraes Loans against Defendants Balles and Moraes.[2] Defendants Balles and Moraes

---

[2] Having found Defendants' gist-of-the-argument unavailing with respect to Plaintiff's fraudulent inducement claims, the Court finds it unnecessary to belabor Defendants' related claim that the economic loss doctrine bars recovery in this case. In *Dittman v. UPMC*, the Pennsylvania Supreme Court articulated a source-of-duty approach for evaluating claims under the economic loss doctrine that essentially mirrors the gist-of-the-action test in *Bruno*. 196 A.3d 1036, 1054 (Pa. 2018). Courts in this circuit have acknowledged that after *Dittman*

counter that even if Next Bank or the Moraes Entities defrauded Plaintiffs, Balles and Moraes cannot be held personally liable for fraudulent conduct committed in their capacities as corporate officers under the gist-of-the-action doctrine. This assertion confuses law.

To support their claims, Defendants point to the Third Circuit's decision in *Addie v. Kjaer*. 737 F.3d 854 (3d Cir. 2013). In that case, the Third Circuit resolved the question of whether a corporate officer, as a non-party to a contract, could be found liable for fraud in a case where a fraud claim against his employer would fail under the gist-of-the-action doctrine. The panel held that under this circumstance such officers could not be found liable for fraud, as plaintiffs "[could not] detach [the officer] from his status as agent for [his employer]." *Id.* at 901.

The panel's holding in *Addie* was not a blanket proscription of officer liability under the gist-of-the-action doctrine, but rather a recognition that "the gist of the action doctrine bars tort claims against an individual officer-defendant *where the duties allegedly breached were created by a contract between the plaintiff and the defendant's company*." *Id.* (emphasis added). As previously discussed, Defendants' duty not to deceive Plaintiffs was grounded in social policy, not the MLPA. As such, *Addie* does not stand for the proposition that Balles and Moraes are immune from Plaintiff's fraud claims.

On the contrary, Pennsylvania law supports liability for Balles and Moraes for torts committed in their roles as officers of their respective companies. Pennsylvania's

---

"the economic loss doctrine has effectively subsumed the gist of the action doctrine." *Rohrbach v. NVR, Inc.*, 545 F. Supp. 3d 237, 242 (E.D. Pa. 2021) (Rufe, J.).

"participation theory" holds that corporate officers can be held liable for torts committed by a corporation if they personally participated in the commission of that tort. *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983). The Amended Complaint repeatedly alleges that Defendants Balles and Moraes were personally involved in concealing Balles' presence on both sides of the Moraes Loans. For instance, it states that Moraes and Balles prepared and submitted the fraudulent loan application and in so doing deliberately concealed Balles' involvement in the Moraes Entities and defrauded Plaintiffs. Am. Compl. at 18, 20. Taking these allegations as true, Moraes' and Balles' officer status does not shield them from liability.

*ii) Parol Evidence Rule*

The Moving Defendants next object that Plaintiffs cannot support a fraudulent inducement claim as they are blocked from introducing evidence to support their claims under the parol evidence rule. Defs.' Br. at 9. As "the parol evidence rule is not one of evidence but of substantive law," it is appropriate for the Court to consider this argument at this stage in the proceedings. *Lefkowitz v. Hummel Furniture Co.*, 122 A.2d 802, 804 (Pa. 1956).

The primary purpose of the parol evidence rule is "preventing the addition to, or varying of, the terms of a written agreement by the introduction of evidence beyond the document itself." *Turner v. Hostetler*, 518 A.2d 833, 836 (Pa. Super. 1986). The rule "insures the integrity of written memorials . . . as representing the whole of their contractual undertakings." *Int. Milling Co. v. Hachmeister, Inc.*, 110 A.2d 186, 190

(Pa. 1955). Consonant with that intention, the parol evidence rule does not implicate representations made *subsequent* to an agreement. *See Nicolella v. Palmer*, 248 A.2d 20, 23 (Pa. 1968) "The parol evidence rule bars only prior or contemporaneous oral agreements[.]". *Id.*

The parties dispute whether the MLPA's integration clause governs each individual loan assignment. *Compare* Defs.' Br. at 9–10 *with* Dkt. 51 (Pl.'s Br.) at 19. Plaintiffs assert that the integration clause only applies to the MLPA. Pl.'s Br. at 19. Plaintiffs' argument follows that as the material misstatements were made after the signing of the MLPA, the parol evidence rule is inapplicable. *Id.* Conversely, Defendants contend that the MLPA's integration clause bars the introduction of evidence related to the misstatements alleged in this case. Defs.' Br. at 10.

The facts of this case most closely resemble those of *Battle Born Munitions, Inc. v. Dicks Sporting Goods, Inc.* No. 22-10045, 2023 WL 4758449 (3d. Cir July 26, 2023). There, the Third Circuit assessed whether purchase orders under a master agreement were governed by the master agreement's integration clause. In that case, the parties had agreed to a framework Vendor Agreement which purported to outline the terms of future sales of custom-branded ammunition between the parties. *Id.* at *1. A divided panel held that although the later-in-time purchase orders would stipulate the prices and quantities involved in the transactions between the parties, the essential terms of the purchase orders were memorialized in the Vendor Agreement. *Id.* at *6. Further, as the Vendor Agreement expressly stated that the terms of the agreement would apply to each purchase order, the intention of the

parties appeared to be for all material terms in the Vendor Agreement to apply to the transactions. *Id.* As a result, the purchase orders themselves should be considered as integrated.

This case is distinguishable from *Battle Born Munitions* in that the purchases of individual loans constitute separate agreements between the parties. In *Battle Born Munitions*, the essential character of the subject of each transaction (i.e., the custom-branded munitions) was clearly contemplated by the parties at the time they entered into the Vendor Agreement. All that was left to determine between the parties was how much ammunition was to be delivered and when. That is not the case here. The mortgage loans at issue are not fungible commodities, but rather "contracts between [ ] borrower and lender." *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 690 (E.D. Pa. 1973). The identity of the parties to the lending agreements are essential terms of those contracts that cut directly to their essence. *See Johnson v. Southeastern Pennsylvania Transp. Auth.*, 570 A.2d 71, 73 (Pa. 1990) ("The requirements, basically, are the same as for any writing which purports to be a contract: the parties must be known . . . ."). By purchasing each loan, the Purchaser assumed contractual duties *vis-à-vis* the recipient of the loan, such as transferring draw amounts. MLPA at 42. The MLPA appears to contemplate this, allowing the Purchaser to conduct due diligence with respect to the individual loans, MLPA at 11–12, and requiring a reaffirmation of the contractual warranties at the time of sale in the form of officer certifications from the Seller. MLPA at 37.

In light of these differences, the Court does not view the sales of individual loans as merely the parties executing the MLPA, but rather separate contractual agreements governed by the procedures and guaranties outlined in the master agreement. In accordance with this finding, the Court does not consider the individual loan assignments to be integrated. If the purchase agreements are not themselves integrated, then the parol evidence rule cannot serve to bar the introduction of extrinsic evidence of misrepresentations made after the signing of the MLPA. *See Friestad v. Travelers Indem. Co.*, 393 A.2d 1212, 1218 (Pa. Super. 1978).

Assuming for the sake of argument that the purchase orders are integrated the Moving Defendants' invocation of the parol evidence rule is still improper. It is true that Pennsylvania courts often bar fraudulent inducement claims in cases arising from integrated written agreements. *See, e.g., Bardwell v. Willis Co.*, 100 A.2d 102, 104 (Pa. 1953); *HCB Contractors v. Liberty Place Hotel Associates*, 652 A.2d 1278, 1279 (Pa. 1995). They do so because a necessary element of a fraud claim is that the claimant demonstrates "justifiable reliance on [a] misrepresentation[.]" *Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa. Super. 2002) (quoting *Sewak v. Lockhart*, 699 A.2d 755, 759 (Pa. Super. 1997)). When a plaintiff brings a fraud claim based on representations made prior to an integrated written agreement this element is negated, as "a party cannot justifiably rely upon prior [ ] representations yet sign a contract denying the existence of those representations." *Id.* at 1036; *see also K&G Contracting, Inc. v. Warfighter Focused Logistics, Inc.*, 689 F. Supp. 3d 35, 44 (E.D. Pa. 2023) (Kearny, J.) ("But when a contract . . . contains a 'fraud-insulating' clause,

we extend the parol evidence rule to bar the use of extrinsic evidence to vary the fraud-insulating term. Without extrinsic evidence, 'it is virtually impossible' to establish the justifiable reliance element of a fraud claim under Pennsylvania law.")

But in the instant case, Plaintiffs allege that the warranties represented in the MLPA *reaffirm* their claim. They are not attempting to introduce extrinsic evidence to vary the terms of the contract in any way. Rather, they seek to "prove a[n] [extracontractual] misrepresentation or concealment." *SodexoMAGIC*, 24 F.4th at 213 (3d Cir. 2022). Plaintiffs "accept[] the terms of the [MLPA] as they are . . . and [ ] seek[] to use the extrinsic evidence to prove that [Defendants] fraudulently induced [them] to enter into" subsidiary purchase agreements. *Id.* In such circumstances, "the parol evidence rule *acting alone* does not prevent fraudulent inducement claims . . . ." *Id.* (emphasis in original)

Accordingly, Defendants' motion to dismiss Plaintiffs' fraud claim is denied.

**C) Tortious Interference**

i) *Notice and Accrual*

The Moving Defendants seek to dismiss Plaintiffs' claim for tortious interference on the grounds that Plaintiffs did not comply with the MLPA's notice and accrual provision. They argue that Subsection 7.03 of the MLPA requires that Purchasers under the agreement notify the Seller of any purported breach of any warranties made in Subsection 7.01 or 7.02 and allow the Seller to either cure the deficiency or repurchase the loan. MLPA at 26–27. Until that has occurred, there is

no cause of action for breach. Defs.' Br. at 9. Without a breach of contract, there can be no claim for tortious interference. *Id.*

Under Pennsylvania law, a cause of action for breach of contract "accrues when there is an existing right to sue forthwith on the breach of contract." *Kowalski v. TOA PA V, L.P.*, 206 A.3d 1148, 1158 (Pa. Super. 2019) (internal quotation marks removed). The right to sue for breach is defined by the contours of the contract itself. *See Harnish v. Shannon*, 141 A.2d 347, 351 (Pa. 1958).

In the Amended Complaint, Plaintiffs allege that Defendant Next Bank breached Subsections 7.01, 7.02, 7.05, 23.01, and 23.02 of the MLPA. Am. Compl. at 38. Subsection 7.03 of the MLPA states, "Upon discovery by the Seller or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans . . ., the party discovering such breach shall give prompt written notice to the other." Dkt. 48-6 (Exhibit E) at 26. After such notice is given, the seller has five business days to cure the breach, and "if such breach cannot be cured within an additional thirty (30) calendar days, the Seller shall repurchase such Mortgage Loans at the Repurchase Price." *Id.* at 27. Regarding the right to bring legal action in response to alleged breaches, the MLPA states:

> Any cause of action against the Seller relating to or arising out of the breach of any representations and warranties made in Subsection 7.01 or 7.02 shall accrue upon the latest to occur of (i) discovery of such breach by the Purchaser or notice thereof by the Seller to the Purchaser, (ii) failure by the Seller to cure such breach, repurchase such Mortgage Loan as specified above, and/or indemnify the Purchaser, and (iii) demand upon the Seller by the Purchaser for compliance with the terms of this Agreement.

*Id.* at 28.

Although this clause does not pertain to the alleged breaches of Subsections 7.05, 23.01, or 23.02, the Amended Complaint contains sufficient factual matter in any case to support a reasonable inference that Plaintiff complied with the contract's notice and cure provisions. Plaintiffs allege that they only discovered the information on which they base their claim of breach in 2025. Am. Compl. at 15. In February of that year, they claim to have sent two demand letters to Next Bank outlining the breaches of the MLPA. *Id.* Next Bank failed to respond. *Id.* These facts, if true, support a reasonable inference that all three predicate conditions for a cause of action to accrue under Subsection 7.03 were met. As a result, both the claims for breach of contract and for tortious interference leading to that breach are properly pled in the Amended Complaint.

*ii) Officer Immunity*

Defendants Balles and Moraes further argue that they are immune from Plaintiffs' tortious interference claim based on their statuses in their respective corporations. As corporate officer immunity is an affirmative defense, it is inappropriate for the Court to resolve this issue at the motion to dismiss stage unless the affirmative defense appears on the face of the complaint. *Johnson v. National Collegiate Athletics Association*, 108 F.4th 163, 177 n.58 (3d Cir. 2024).

Neither party suggests that Defendant Moraes is an agent of Next Bank. Accordingly, he has no claim to immunity with respect to Plaintiffs' tortious

interference claim and the Court will only consider this argument as pertains to Defendant Balles.

Under Pennsylvania law, "[t]he actions of a principal's agent are afforded a qualified privilege from liability for tortious interference with the principal's contract." *CGB Occupational Therapy, Inc. v. RHA Health Services Inc.*, 357 F.3d 375, 385 (3d Cir. 2004). This privilege "applies only when the agent is acting within the scope of its authority." *Id.*

The Amended Complaint alleges that the Defendants induced Next Bank to breach its contractual obligations by:

a. Concealing and misrepresenting the insider relationships, ownership, and control of the Moraes Entities, while causing loans to be sold as if they were arm's-length;
b. Facilitating and benefitting from the submission, approval, and payment of construction-draw requests supported by insider-controlled budgets, invoices, and project-status communications that were false, misleading, or materially incomplete; and
c. Coordinating borrower-control transfers, contractor payments, and post-default acquisition efforts to divert proceeds and monetize collateral at Plaintiff's expense.

Am. Compl. at 39. It further alleges that their conduct was "not privileged or justified" and that "[t]hey were not merely exercising contractual rights, engaging in lawful competition, or acting solely as agents within the scope of Next Bank's corporate interests." *Id.*

These allegations, if true, support a reasonable inference that Balles acted outside of his capacity as a corporate officer. Beyond Plaintiffs' explicit assertion to that effect, the Amended Complaint alleges specific conduct of Balles that suggests

he operated outside of the scope of his corporate responsibilities. For instance, Plaintiffs assert that Balles "assisted Moraes and the Moraes Entities with the loan applications." Am. Compl. at 18. Whether or not these actions were within the scope of Balles' role as an officer of Next Bank is a question of fact that may be resolved in Balles' favor in future judicial proceedings, but at this stage the Court does not find his immunity to be established on the face of the Amended Complaint.

Finding no indication that Plaintiffs' action for breach of contract is premature nor that any of the Moving Defendants enjoy immunity against tortious interference claims, Defendants' motion to dismiss Plaintiffs' tortious interference claim is denied.[3]

**D) RICO**

Finally, the Moving Defendants seek dismissal of Plaintiffs' RICO claims on various grounds. First, they argue that the Amended Complaint fails to plead a RICO "enterprise" distinct from Next Bank. *Id.* They then go on to assert that Plaintiffs failed to plead the predicate acts of wire fraud with specificity as required under Federal Rule of Civil Procedure 9(b). *Id.* at 18. Finally, the Moving Defendants assert that Plaintiffs fail to tie the Moving Defendants to the predicate acts on which they base their RICO claims. *Id.* at 18–19.

[3] Defendants further argue that Plaintiffs' civil conspiracy claim should be dismissed on the grounds that Plaintiffs have failed to state an underlying tort claim. Defs.' Br. at 14. Considering the Court's denial of Defendants' Motion to Dismiss Plaintiffs' fraud and tortious interference claims, the Court also denies Defendant's Motion to Dismiss the civil conspiracy claim.

The RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities for which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt," 18 U.S.C. 1962(c), or conspiring to do the same. 18 U.S.C. 1962(d). The statute defines "racketeering activity" in relation to various predicate criminal acts. 18 U.S.C. § 1961. One such predicate act is wire fraud, which occurs when a defendant "transmits or causes to be transmitted" electronic communications in furtherance of "[a] scheme or artifice to defraud." 18 U.S.C. 1343.

RICO "enterprises" can either be legitimate businesses or they can be 'associations-in-fact' that do not themselves comprise a legal entity. *U.S. v. Turkette*, 452 U.S. 576, 581–582 (1983).

As an initial matter, the Court is satisfied that Plaintiffs have properly plead an association-in-fact enterprise. Put simply, "an association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. U.S.*, 556 U.S. 938, 946 (2009) (quoting *Turkette*, 452 U.S. at 583) Plaintiffs clearly identify such a group in the Amended Complaint, stating:

> Defendants carried out [their] misconduct through an association-in-fact enterprise that functioned as a continuing unit distinct from any single defendant. Next Bank served as originator, seller, and administrative gatekeeper; Balles served as organizer and decision-maker; Moraes and the borrower entities served as nominal borrowers to mask insider control; A/X Carpenters–owned and controlled by Moraes–served as the insider-controlled recipient of construction-draw proceeds; and affiliated entities were used to shift ownership, recycle proceeds, and pursue post-default collateral opportunities.

Am. Compl. at 3.

In their brief, Moving Defendants mischaracterize Plaintiffs' claims as stating that Next Bank is "the enterprise through which the other RICO defendants allegedly effectuated their goals." *Id.* at 15. But this is a misreading of the Amended Complaint. Here, Plaintiffs describe a complex organization with differentiated responsibilities oriented towards a common goal of extracting funds from lenders through fraudulent means. These claims go beyond merely asserting, as Moving Defendants do, that Next Bank was "the enterprise through which the other RICO defendants allegedly effectuated their goals."

The remainder of Moving Defendants' argument for dismissal of Plaintiffs' RICO claims is based on whether Plaintiff has plead the predicate act of wire fraud against each of the Moving Defendants with particularity. Having alleged wire fraud as the predicate act for Plaintiffs' RICO claim, their pleadings are subject to the specificity standard for fraud claims articulated in Federal Rule of Civil Procedure 9(b). *Lum*, 261 F.3d at 223. Rule 9(b) requires that Plaintiffs "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Federico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). The purpose of this heightened pleading standard is to "insure adequate notice so that defendants can intelligently respond." *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 233 (3d Cir. 2011).

The Court is satisfied that the allegations in the Amended Complaint are sufficiently precise to apprise Defendants of the accusations against them. Plaintiffs

state that "[f]or each Moraes Loan sold to Plaintiffs, Next Bank transmitted; or caused to be transmitted, loan-sale communications and closing materials to Plaintiffs by interstate electronic means—including emails, electronic data transmissions, and wire instructions—designed to induce Plaintiffs to wire purchase funds for loans falsely presented as arm's-length and independently underwritten." Am. Compl. at 29. Among these were the loan applications from the Moraes Entities, *Id.* at 20, which Defendant Moraes and the Moraes Entities completed with Defendant Balles' assistance. *Id.* at 18. The Amended Complaint details the dates of these loan applications. *Id.* at 19. It further alleges that "Moraes, and his entities, the Moraes Entities and A/X Carpenters, requested and received significant construction advances," creating a system by which "Ballas [sic] and Next Bank approved payments to themselves with no intent to complete the construction of the Moraes Properties . . . ." *Id.* at 25. The Amended Complaint identifies specific draw requests and construction progress updates made using email and text messages as fraudulent. *Id.* at 24–27. Considering the extent and detail of these allegations, the Court finds that Plaintiffs have tied each of the Moving Defendants to the predicate act of wire fraud and injected a sufficient level of specificity to give Defendants fair notice of the fraud claims levelled against them.

Accordingly, Defendants' Motion to Dismiss Plaintiffs' RICO claim is denied.

**E) Motion to Strike**

As a final matter, the Moving Defendants request that the Court strike the Amended Complaint's reference to the investigative newspaper report on Defendant

Balles' connection to Washington, D.C. landlord Sam Razjooyan. The Court emphasizes that "[t]he standard for striking under Rule 12(f) is strict." *In re Catanella and E.F. Hutton and Co., Inc. Securities Litigation*, 583 F. Supp. 1388, 1400 (E.D. Pa. 1984). One court in this Circuit has previously noted that "motions to strike are not favored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *River Road Development Corp. v. Carlson Corporation-Northeast*, No. 89–7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990).

The article linked in the Amended Complaint details allegations that Razjooyan used fraudulent loan documentation to escape underwriting requirements and later defaulted on those loans. Amanuel, Suzie, *Lender That Helped Fund Slumlord Sam Razjooyan Was Warned About Alleged Fraud. They Loaned Him Millions*, Washington City Paper (April 1, 2025), https://washingtoncitypaper.com/article/761427/razjooyan-loan-red-oak-lender/#:~:text=accumulate%20almost%20300%20units. The article documents the business relationship between Razjooyan and Balles, including describing legal proceedings against a corporation controlled by the two for failure to repay a mortgage loan. Given the similarities between the conduct described in the article and the present complaint, the Court does not find the reference to the article to "have no possible relation to the controversy."

As a result, the Motion to Strike is denied.

## IV. Conclusion

In light of the foregoing, the Moving Defendants' Motion to Dismiss is denied in its entirety. An appropriate Order will follow.

DATED: July 30, 2026

BY THE COURT:

GAIL A. WEILHEIMER, J.